IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 13, 2025

**STATE OF TENNESSEE v. MATTHEW SAUNDERS**

**Appeal from the Circuit Court for Montgomery County**
**Nos. CC-19-CR-330; CC-20-CR-328      Robert T. Bateman, Judge**

_____

**No. M2024-01046-CCA-R3-CD**

_____

The Defendant, Matthew Saunders, appeals from the trial court's revocation of judicial diversion and entry of judgments of conviction in two cases. Specifically, he contends that the trial court abused its discretion in finding that he violated the terms of his diversion by failing to timely disclose multiple social media accounts when he registered as a sex offender. After review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

KYLE A. HIXSON, J., delivered the opinion of the court, in which J. ROSS DYER and TOM GREENHOLTZ, JJ., joined.

John D. Parker, Clarksville, Tennessee, for the appellant, Matthew Saunders.

Jonathan Skrmetti, Attorney General and Reporter; J. Katie Neff, Assistant Attorney General; Robert J. Nash, District Attorney General; and Marianne Bell and Hailey E. Thompson, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

### I.      FACTUAL AND PROCEDURAL HISTORY

On March 21, 2022, the Defendant pled guilty to two counts of statutory rape, and he was placed on judicial diversion supervised by the State Probation Office. As a condition of his diversion, the Defendant was required to register as a sex offender during the diversionary period. He did so on March 23, 2022, and the form that he signed included a warning that his knowing failure to timely disclose required information may result in prosecution for a Class E felony violation of the registration laws. The form also specified that offenders were required to report "a change of any other information given to the

registering agency" within forty-eight hours, which expressly contemplated "the complete listing of the offender's electronic mail address information, including usernames, [and] any social media accounts the offender uses or intends to use[.]" *See* Tenn. Code Ann. § 40-39-203(i)(17). At the time of his initial registration, the Defendant reported that he used a Yahoo email address, an Xbox Live account, a Facebook account, and a Snapchat account. The information the Defendant provided for each of these accounts identified him as "Matthew Heady," with the exception of the Xbox Live account, which listed a username that did not otherwise identify the Defendant.

On October 12, 2023, the Defendant's supervising officer, James Ward, received a tip that the Defendant was using other social media platforms under the pseudonym "Matthew Heady." Upon investigating, Officer Ward discovered that the Defendant had active accounts on Instagram, X (formerly known as Twitter), and TikTok. Each of these accounts used the name "Matthew Heady" and displayed an image of the Defendant as the profile picture. On October 16, 2023, Officer Ward charged the Defendant with keeping three unregistered social media accounts in violation of Tennessee Code Annotated section 40-39-208(a)(3). The warrant narrative completed by Officer Ward noted that, pursuant to Tennessee Code Annotated section 40-39-203, "[the Defendant] had three days from creation or initial registration to add electronic ID information to the Sex Offender Registry[,]" which the Defendant failed to do. Officer Ward also completed a violation of diversion warrant, alleging that the Defendant had violated the terms and conditions of his diversion by failing to obey the Tennessee Sex Offender Registry laws, resulting in new criminal charges.

The trial court held a hearing on June 5, 2024. Officer Ward testified that "any change in social media accounts ha[d] to be [reported] at the time of intake or within seventy-two business hours of the change." He confirmed that the Defendant had not disclosed his use of these three accounts during his initial registration or at any time thereafter. When Officer Ward confronted the Defendant with the information on October 16, 2023, the Defendant admitted to having the Instagram account, admitted to having the TikTok account but denied using it, and denied having the X account. However, Officer Ward then conducted a search of the Defendant's phone, and the X application was found on his phone with the account in question logged in and accessible to him.

Officer Ward had taken "screenshots" of the Defendant's unreported social media accounts. Referring to these images, Officer Ward identified a July 30, 2023 post made on X with a picture of the Defendant's face, captioned "it's been a minu[te]"; an Instagram post depicting the Defendant in Murfreesboro, Tennessee, which had been posted "nineteen hours prior" to the screenshot being taken on October 16, 2023; and an Instagram post from

July 18, 2023, depicting the Defendant in Nashville, Tennessee. The State then sought to introduce the screenshots into evidence. The Defendant objected on the basis that the screenshots did not conclusively establish when the activity on the accounts took place. The trial court partially overruled the objection, stating "I am going to allow this to be admitted as Collective Exhibit 2 for the purposes of . . . what was on the social media accounts as of the dates that are posted. As to the date the content was posted, I won't consider it for that."

On cross-examination, Officer Ward testified that the Instagram and X accounts had been created in 2013, but he was unable to determine when the TikTok account was created. When asked by defense counsel about the specific posts to the accounts, Officer Ward stated that the Defendant had "a lot of favorites of . . . pornographic actresses," which was against compliance with the Defendant's psychosexual evaluation recommendation of "no pornography." Officer Ward testified that one of these posts had been "liked" by the Defendant on October 13, 2023. Officer Ward qualified this knowledge by stating that "on [X], if [the activity] is in the same year . . . it only shows the month and the day. The post was created on October 13th."

The Defendant's uncle, James Heady, testified that the Defendant lived with him and maintained full-time employment. He confirmed that the living arrangement "worked out well" and that he had no issues with the Defendant. The presentence investigation report filed in advance of the hearing was received into evidence without objection, and the Strong-R assessment considered the Defendant a "moderate low" risk to reoffend.

Following argument by the parties, the trial court found the Defendant in violation of the terms of his judicial diversion:

> The Court looks at the agreement signed by the Defendant on [March 23, 2022], which outlines his requirements to complete a listing of his social media accounts that he uses or intends to use . . . and so the Court finds that [the Defendant] was aware of his obligation to truthfully report all social media accounts that he had pursuant to the terms of his supervision[.]

The trial court expressly found "by preponderance of the evidence, based upon the exhibits entered that [the Defendant] . . . failed to report at least two social media accounts and admitted he had failed to do that." Upon this finding, the trial court revoked the Defendant's judicial diversion, entered judgment, and required him to serve his sentences on supervised probation, "subject to the continuing conditions of the sex offender registry and all other conditions of probation."

This appeal followed.

## II.   ANALYSIS

On appeal, the Defendant contends that there was no "change" to his social media accounts during the time he was on the registry—based on the X and Instagram accounts having been created nine years beforehand, and no evidence being presented regarding the creation of his TikTok account—meaning the evidence was insufficient to support the finding of a violation of his diversion.[1]  The State responds that substantial evidence was introduced to show that the Defendant violated Tennessee law requiring sex offenders to timely disclose a complete listing of social media accounts.  We agree with the State.

Judicial diversion operates in concert with probation, as it allows a trial court to place a qualifying defendant "on probation upon such reasonable conditions as [the trial court] may require without entering a judgment of guilty[.]"  Tenn. Code Ann. § 40-35-313(a)(1)(A).  Like regular probation, diversionary probation may be revoked if the defendant fails to comply with the terms and conditions of the imposed supervision, and the revocation of judicial diversion results in a criminal conviction with a sentence imposed for the formerly deferred offense.  *Id.* § -313(a)(2) ("Upon violation of a condition of the probation, the court may enter an adjudication of guilt and proceed as otherwise provided."); *see also State v. King*, 432 S.W.3d 316, 323 (Tenn. 2014) (noting that a sentence may only be imposed after the defendant is found to have violated diversionary probation).  To determine whether a violation has occurred, the trial court should follow the same procedures used for revocation of probation.  *State v. Johnson*, 15 S.W.3d 515, 519 (Tenn. Crim. App. 1999); *see also Alder v. State*, 108 S.W.3d 263, 266 (Tenn. Crim. App. 2002).  Likewise, this court uses the same standard of review applicable to probation revocation proceedings to assess a trial court's revocation of judicial diversion.  *State v. Weld-Ebanks*, No. M2022-01665-CCA-R3-CD, 2024 WL 370105, at *3 (Tenn. Crim. App. Jan. 31, 2024).

Appellate courts review a trial court's revocation of probation decision for an abuse of discretion with a presumption of reasonableness "so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the

---

[1] On appeal, the Defendant also purports to renew his objection to the introduction of the screenshots at the hearing based on their inability to show when the posts were created.  However, this argument is waived due to insufficient briefing, namely the Defendant's failure to properly designate it is as an issue or cite to any authority in support of his argument.  *See* Tenn. R. App. P. 27(a); Tenn. Ct. Crim. App. R. 10(b).

consequences on the record." *State v. Dagnan*, 641 S.W.3d 751, 759 (Tenn. 2022). "A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010). "The trial judge may enter judgment upon the question of the charges as the trial judge may deem right and proper under the evidence adduced before the trial judge." Tenn. Code Ann. § 40-35-311(d)(1). "If the trial judge finds by a preponderance of the evidence that the defendant has violated the conditions of probation and suspension of sentence, then the court may revoke the defendant's probation and suspension of sentence, in full or in part, pursuant to § 40-35-310." *Id*.

The trial court in this case ordered the Defendant to comply with the terms of the Tennessee Sex Offender Registry as a condition of his diversionary probation. *See id.* §§ -39-201 to -219. As relevant to the violation alleged, the applicable statute provides that initial sex offender registry forms require disclosure of the following information, along with the offender's signature acknowledging the accuracy of the information provided: "A complete listing of the offender's electronic mail address information, including usernames, any social media accounts the offender uses or intends to use, instant message, other internet communication platforms or devices, and the offender's username, screen name, or other method by which the offender accesses these accounts or websites[.]" *Id.* § -39-203(i)(17). "Within three (3) days, excluding holidays, of an offender changing the offender's electronic mail address information, any instant message, chat or other internet communication name or identity information that the person uses or intends to use . . . the offender shall report the change[.]" *Id.* § -203(a)(7). The Defendant was charged with a violation of this statute, and a concurrent violation of his diversionary probation, based on his "[f]ailure to timely disclose required information to the designated law enforcement agency[.]" *Id.* § -208(a)(3).

The Defendant's argument that his preexisting unreported social media accounts do not constitute a "change" is misguided. The statute clearly requires initial disclosure of the "complete listing" of social media accounts used or intended to be used by the Defendant. *Id.* § -203(i)(17). While his existing social media accounts may not have changed, he was required to report all of his accounts then in existence upon his initial registration. Thus, the information he provided at his initial registration was incomplete. The statute, however, afforded him a grace period to make changes to the information he had previously provided. *See id.* § -203(a)(4) ("Within forty-eight (48) hours of a change *in any other information given to the registering agency* by the offender that is contained on the registration form, the offender must report the change to the registering agency." (emphasis added)). Although Officer Ward mistakenly believed that the Defendant had seventy-two

hours to report this information, rather than forty-eight, the evidence established that the Defendant did not report these accounts at any point, regardless of how long he had to do so. Furthermore, the form the Defendant signed during his initial registration expressly acknowledged this requirement, as well as the time frame for updating any change in the information he provided. The trial court, therefore, correctly found that the Defendant was aware of the statutory reporting requirements and knowingly failed to comply with them. The trial court did not abuse its discretion in finding that the Defendant committed a violation of his judicial diversion. *See State v. Dowlen*, No. M2024-00534-CCA-R3-CD, 2024 WL 4533374, at \*5 (Tenn. Crim. App. Oct. 21, 2024) (affirming the revocation of probation for a defendant's failure to report all new social media accounts within three days of making the account), *no perm. app. filed*. The evidence supports revocation under these circumstances. The Defendant is not entitled to relief.

## III. CONCLUSION

Based upon the foregoing and consideration of the record as a whole, we affirm the judgments of the trial court.

 s/ Kyle A. Hixson
KYLE A. HIXSON, JUDGE
